[Civ. No. 2376.    Third Appellate District.—December 3, 1921.]

P. N. ASHLEY et al., Respondents, v. SUTTER BUTTE CANAL COMPANY (a Corporation), Appellant.

[1] CONTRACT — CONSTRUCTION OF IRRIGATION DITCHES — WAIVER OF DAMAGES FOR NONCOMPLETION—INAPPLICABILITY TO SUBSEQUENT ORAL AGREEMENT—SUBSTITUTED METHOD OF IRRIGATION.—The provision in a written contract for the construction of canals and ditches by a canal company to the lands of a private land owner in order that such lands might receive water for irrigation that owing to the lateness of the season the land owner would not claim any damages for or on account of the noncompletion of the ditches, is inapplicable to a subsequent oral agreement substituting an entirely different method of irrigating such lands by the company which did not involve the construction of any ditches, but of supplying the water through ditches already constructed.

APPEAL from a judgment of the Superior Court of Butte County.    H. D. Gregory, Judge.    Affirmed.

The facts are stated in the opinion of the court.

Henry Ingram and W. H. Carlin for Appellant.

George F. Jones for Respondents.

BURNETT, J.—The action was for damages for the failure of defendant to furnish sufficient water for the irrigation of a rice crop on 450 acres of land belonging to plaintiff, Ashley.    The claim was for $30,000 and a jury awarded to plaintiffs the sum of $1,800.    Only one point is made by appellant, namely, that the evidence is insufficient to support the verdict.    The contention is based upon the claim of the insufficiency of the evidence to establish a contract between the parties, but more particularly, as we understand the contention, that in the asserted contract which is the basis of this action respondents waived any claim for damages.    As appellant states: "In the spring of 1918 P. N. Ashley owned some land and was about to purchase and afterward did purchase for cropping to rice during that season other lands which he and certain tenants and associates afterward during that year sought to crop to rice. Of course, water was necessary for the enterprise.    No irri-

gation ditches had as yet been constructed to any of these lands and Mr. Ashley along about April, 1918, took up with appellant a proposition whereby it was to construct ditches and canals to these lands in order that they might receive water for irrigation.'' It is not disputed that a contract in writing was formulated and signed by Mr. Ashley, but afterward it was abandoned by mutual consent because it was found impracticable to irrigate by the method therein provided and it was superseded by an oral contract. As to the terms of this oral contract there is a conflict, but, obviously, we must accept the version of the respondents. The following substantially covers Mr. Ashley's testimony in reference to it: ''Q. Now, when you did ascertain between yourself and Mr. Tulloch that the water could not get on the 606-acre tract of land by gravity and then what was agreed to or done by you and him? A. I met Mr. Tulloch and I said to Mr. Tulloch: 'I understand that we cannot flow the water from the west part of the Crocker tract from that ditch' and he said 'that was true but he would put pumps in there and pump that water for me over that tract from Dry Creek.' Q. Did you have any different contract or agreement for the pumping of the water on there than you had for the furnishing of water to the rest of your land? A. The conversation was brief. I told him 'all right that that was all right,' and it ended there. Q. Did you understand that you would be served with water for that tract of land in all respects practically on the same terms that you were being served on your other tracts excepting that it was to be pumped on there for you? A. Yes, sir. Q. And in all other respects the contracts were practically the same. A. I repeated the conversation—I told you just the conversation. Q. Your understanding? A. I understood that the contract was to be carried out excepting as to the pumping. Q. That it would be in effect just the same as if exhibit 'B' had been signed or number one, rather—except that you were to get the water by being pumped instead of coming by gravity? A. Yes, sir.'' He further testified that Mr. Tulloch told him that he would turn the water into said Dry Slough from the ditch above and would install two pumps; that after these pumps were in operation he ''notified Mr. Tulloch that the pumps were not carrying their rated capacity, that they should carry a great deal

more than they were carrying, that there was something the matter with the pump and Mr. Tulloch came out and viewed the situation and he said that he would get a different pulley and put it on the pump to see if it would not do better." It is not controverted that respondents relied upon this agreement in incurring the expense of preparing the land for a rice crop, but appellant seems to think the case is rendered difficult by reason of the following provision in said exhibit "B": "It is further mutually understood, stipulated and agreed by and between the parties hereto that owing to the lateness of the season, said party of the second part will not claim any damages for or on account of the noncompletion of the ditch or ditches herein above referred to, and will not claim that the failure to complete said ditch or ditches was caused by lack of due diligence or reasonable efforts on the part of the party of the first part to complete said ditch or ditches to the lands and premises hereinabove described; and in this connection it is further stipulated and agreed, and hereby admitted by the party of the second part that this contract would not be entered into by said Sutter Butte Canal Co., in view of the lateness of the season without the waiver in this paragraph contained being made by the party of the second part."

[1] This language is entirely plain and it cannot be doubted that it provided for a waiver of damages in the event of only one contingency and that is, the failure to complete the ditch which it was supposed originally to build in order to carry water by gravity to said land. It could not possibly apply to the oral agreement, which was substituted, for the reason that, under the executed agreement, there was no ditch to construct. Dry Creek was a natural waterway and the ditches and flumes crossing it, which appellant used in conveying water, had been constructed for years. Respondents understood—and rightly so—that appellant was to supply the pumps by opening the gates in the flumes where they crossed said Dry Creek and allowing sufficient water to pass down to satisfy the needs of the land.

The only reasonable construction of the agreement between the parties, as we view it, is, that all the terms embodied in said written instrument, which were applicable to

the substituted method of irrigation, were to control the parties, but said covenant being entirely extraneous and contemplating a contingency that would not possibly arise could not have been in the minds of said parties. The conditions which were obviously included in the agreement are found in the following portion of said writing: "The first party agrees to furnish sufficient water to the second party during said period and for such additional number of years thereafter during the term of the corporate existence of the first party, its successors and assigns, as the second party may desire, for the irrigation of said land for rice, not exceeding the ratio of three cubic feet of water per second for each 160 acres of land and the second party agrees to pay therefor to the first party annually during said period and annually in said additional years at its office, in gold coin of the United States, at the rate of $7 per acre, and if more than said ratio of three cubic feet of water per second for 160 acres is used by the second party in any year, the second party shall pay the first party for said excess such additional proportion of the foregoing rate per acre as the excess of water used bears to three cubic feet of water per second for 160 acres.''

Of course, the result is the same if we regard said covenant of waiver as a part of the new agreement. The situation would then be that appellant agreed to furnish the water by means of pumps that were to be thereafter constructed and by means of ditches that had already been constructed, provided that appellant should not be liable for damages by reason of its failure to construct a ditch for conveying said water. There was and could be no such failure, and therefore the condition did not exist that relieved appellant from its obligation to supply what water was needed by respondents. There is no pretense, it may be said, of a provision exonerating appellant from liability for its failure to deliver sufficient water by the substituted method, and this failure is the basis for respondents' action.

It is true, as before stated, that appellant also claims that there was no contract between the parties, or as declared in the closing brief: "This isn't a case where appellant is seeking an excuse for nonperformance of contract because of any difficulty in performance. It is a case where there was no contract at all; simply an offer of a makeshift

accepted by respondents for what it might be worth to them.'' This statement, however, is based upon the testimony that was favorable to appellant, while we, of course, are required to regard the evidence for respondents as controlling. That such evidence justifies the conclusion that a contract was entered into similar to the written proposal, with the modification already noted, we think, is quite apparent.

There can be no escape from the conclusion that the judgment is supported, and it is therefore affirmed.

Finch, P. J., and Hart, J., concurred.